# IN THE COURT OF COMMON PLEAS
## FRANKLIN COUNTY, OHIO

| | |
|---|---|
| **OHIO DEPARTMENT OF MEDICAID**<br>50 West Town Street, Suite 400,<br>Columbus, Ohio 43215 | CASE NO.:<br><br>JUDGE: |
| and | |
| **STATE OF OHIO**<br>David A. Yost<br>**Attorney General of Ohio**<br>30 E. Broad Street, 25th Floor<br>Columbus, OH 43215 | |
| Plaintiffs, | |
| v. | |
| **CENTENE CORPORATION**<br>c/o Statutory Agent<br>**CT Corporation System**<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | |
| and | |
| **BUCKEYE HEALTH PLAN<br>COMMUNITY SOLUTIONS, INC.**<br>c/o Statutory Agent<br>**CT Corporation System**<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | |
| and | **COMPLAINT** |
| **ENVOLVE PHARMACY SOLUTIONS**<br>c/o Statutory Agent<br>**CT Corporation System**<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | **(JURY DEMAND ENDORSED HEREON)** |
| Defendants. | |

FILED
COMMON PLEAS COURT
FRANKLIN CO. OHIO
2021 MAR 11 PM 1:29
CLERK OF COURTS

1

Plaintiffs, the Ohio Department of Medicaid ("ODM") and the State of Ohio (collectively, "Plaintiffs") for their Complaint against Defendants, Buckeye Health Plan Community Solutions, Inc. ("Buckeye"), Envolve Pharmacy Solutions, Inc. ("Envolve"), and Centene Corporation ("Centene") (collectively, "Defendants"), allege as follows:

## I.     Nature of the Action

1.     Plaintiffs bring this lawsuit to recover damages from Buckeye, a Managed Care Organization ("MCO") for ODM, Buckeye's Pharmacy Benefit Manager, Envolve, and Centene, which is the parent company of both Buckeye and Envolve.

2.     Plaintiffs allege that Buckeye has violated Ohio laws applicable to MCOs providing Medicaid services to the citizens of Ohio, that such violations constitute breaches of Buckeye's Provider Agreement with ODM and breaches of the covenant of good faith and fair dealing inherent in every contract entered into in this state.

3.     Plaintiffs further allege that Envolve, Centene and Buckeye participated in a conspiracy to wrongfully and unlawfully obtain monies from ODM to which they were not entitled in violation of the laws of the State of Ohio.

4.     Plaintiffs assert that the wrongful acts committed by Defendants, both individually and in malicious combination with one another, were intended to and did in fact unlawfully and unjustly enrich Defendants at the expense of the citizens of the State of Ohio, who were damaged by such actions and breaches of contract.

5.     Based on Defendants' actions and breaches of contract, Plaintiffs assert that Defendants are liable for tens of millions of dollars in unlawfully obtained Medicaid payments, civil penalties imposed by law, accrued interest, treble damages, and the expenses incurred by the

Plaintiffs in the prosecution of this lawsuit. Defendants' improper conduct also disqualifies them from participation in the State of Ohio's Medicaid Program.

## II. Parties

6. Plaintiff, the Ohio Department of Medicaid, is the governmental agency in the State of Ohio charged with administering Medicaid benefits to qualifying Ohioans. ODM oversees the administration of Medicaid benefits to over 3.1 million recipients in Ohio at an overall cost in excess of $28.2 billion annually of which $3.89 billion is allocated to pharmaceutical coverage.

7. Plaintiff, the State of Ohio, brings this action by and through its Attorney General, David A. Yost, in its sovereign capacity in order to protect the interests of the State of Ohio.

8. Defendant Buckeye Community Health Plan, Inc. is an Ohio corporation and is a wholly owned subsidiary of Centene Corporation.

9. Defendant Envolve Pharmacy Solutions, Inc. is a Delaware corporation registered to do business in the State of Ohio and is a wholly owned subsidiary of Centene Corporation.

10. Defendant Centene Corporation is a Delaware corporation registered to do business in the State of Ohio.

## III. Jurisdiction and Venue

11. This Court has jurisdiction over Plaintiffs' claims pursuant to R.C. § 2305.01, which gives the Court of Common Pleas general jurisdiction over civil actions. This Court has personal jurisdiction over the Defendants because Buckeye, Envolve, and Centene do business in Ohio and have the requisite minimum contacts with Ohio necessary to permit the Court to exercise jurisdiction.

12. Venue is proper in Franklin County, Ohio, pursuant to Ohio Civ. R. 3(C)(3).

13.     Jurisdiction and venue are also established by R.C. § 5164.35 (E), which allows the Attorney General to commence suit to enforce the provisions of R.C. §5164.35 in any court of competent jurisdiction.

### IV. Ohio Statutes and Regulations Applicable to MCOs

14.     MCOs like Buckeye provide services to Medicaid beneficiaries pursuant to contracts between the MCOs and ODM called Provider Agreements ("ODM Provider Agreements"). The ODM Provider Agreements are uniform for all MCOs working at a given time for ODM; the ODM Provider Agreements are regularly updated.[1]

15.     At all times relevant to the claims alleged herein, Buckeye's ODM Provider Agreements expressly incorporated the provisions of Ohio Administrative Code Chapter 5160-26, which regulates the operations of MCOs.[2]

16.     At all times relevant to the claims alleged herein, Buckeye's ODM Provider Agreements required Buckeye to comply with all applicable laws related to its work under the ODM Provider Agreement.[3]

17.     At all times relevant to the claims alleged herein, Buckeye's ODM Provider Agreements permitted ODM to terminate its contract with Buckeye if Buckeye or its subcontractors violated or failed to comply with the provisions of the ODM Provider Agreements or other laws and regulations governing the Ohio Medicaid Program.[4]

---

[1] Since January 1, 2016, the uniform ODM Provider Agreement for MCOs has been updated on 16 occasions. Copies of each iteration of the ODM Provider Agreement may be viewed at https://medicaid.ohio.gov/Managed-Care/For-Managed-Care-Plans. All the Provider Agreements are not attached due to the volume and all parties have access to the documents. A copy of the ODM Provider Agreement effective as of April 1, 2018 is attached hereto as Exhibit 1.
[2] Exhibit 1, Article XIV (A) ("OAC Chapter 5160-26 is hereby incorporated by reference as part of this Agreement having the full force and effect as if specifically restated herein.")
[3] Exhibit 1, Article IV (B).
[4] Exhibit 1, Article VII (E).

18.    At all times relevant to the claims alleged herein, Buckeye's ODM Provider Agreements, through their express incorporation of OAC Chapter 5160-26, permitted Buckeye to subcontract with other providers to perform parts of its work, but only when certain conditions were satisfied; for example, Buckeye could not utilize subcontractors to relieve itself of the legal liability to ensure that all work under its ODM Provider Agreements was performed in compliance with applicable laws and regulations.[5]

19.    At all times relevant to the claims alleged herein, Buckeye's ODM Provider Agreements, through their express incorporation of OAC Chapter 5160-26, required that all subcontractors working for Buckeye fully disclose the "method and amount of compensation or other consideration to be received by the provider" from Buckeye. [6]

20.    At all times relevant to the claims alleged herein, Ohio law has prohibited Medicaid providers from doing any of the following:

a.    Using deception to obtain, or attempting to obtain, payments under the Medicaid program to which the provider is not entitled;

b.    Willfully receiving payments to which the provider is not entitled;

c.    Willfully receive payments in a greater amount than that to which the provider is entitled; and

d.    Falsifying any report or document required by law or under the Provider Agreement relating to Medicaid payments.

R.C. § 5164.35 (B)(1).

21.    Any violation of the prohibitions set forth in R.C. § 5164.35 subjects a Medicaid provider to penalties in addition to a suit for damages, including:

a.    Charges for interest on amounts wrongfully obtained;

b.    Treble damages;

---

[5] *See, e.g.* OAC § 5160-26-05.
[6] *See, e.g.* OAC § 5160-26-05(D)(7).

    c.      Penalties not less than $5,000.00 and not more than $10,000.00 for each deceptive claim or falsification;

    d.      Liability for costs incurred by the State in enforcing the provisions of R.C. §5164.35;

    e.      Termination of the violating party's provider agreement; and

    f.      Withholding all payments to the provider.

R.C. §5164.35 (C) and (D).

### IV. Factual Background

22.     ODM is tasked with administering the State's medical assistance plan. ODM administers this plan, in part, by contracting with MCOs to provide all necessary medical services to the Medicaid beneficiaries assigned to that MCO.

23.     In exchange for providing these services, MCOs are compensated in the form of a per-member-per-month capitation payment, the amount of which is calculated, in part, based upon the MCO's reported expenses from previous years.

24.     ODM currently contracts with five different MCOs to provide comprehensive medical services on behalf of Medicaid beneficiaries. Since 2004, Buckeye (a wholly-owned subsidiary of Centene) has served as an MCO in Ohio.

25.     Buckeye's contractual model for administering pharmacy benefits differs substantially from every other MCO operating in Ohio. Unlike the other MCOs, which provide pharmacy services via a single subcontracted Pharmacy Benefit Manager ("PBM"), Buckeye subcontracts with three PBMs to provide pharmacy services to its Medicaid beneficiaries. Significantly, two of these subcontractors, Envolve and Health Net Pharmacy Solutions ("HNPS") are sister companies of Buckeye; all three companies are owned by the same parent company, Centene.

26. When Buckeye was initially awarded its MCO contract with ODM, it provided all required pharmacy benefits through a single subcontract with Envolve (formerly U.S. Scripts). During this initial period, Buckeye administered pharmacy services in the same fashion as every other MCO working for ODM.

27. Things changed, however, when Centene acquired HNPS in March 2016. As a result of the HNPS purchase, Centene acquired the rights to a contract HNPS previously negotiated with CVS Caremark ("Caremark"), the nation's largest Pharmacy Benefit Manager ("the HNPS-Caremark Contract").

28. Due to Caremark's leverage in the industry, the HNPS-Caremark Contract contained more favorable pricing terms both for claims processing and pharmacy discounts than those Envolve (Centene's captive, wholly-owned subsidiary PBM) had been able to negotiate on its own. Centene and Envolve quickly realized that they could shift the work of processing Buckeye's pharmacy claims to Caremark, pay lower prices, obtain per claim discounts, and keep the resulting savings as profits by concealing them from ODM.

29. On March 24, 2016, less than one month after Centene acquired HNPS, Envolve executed a "Pharmacy Benefits Management Subcontract Agreement" with HNPS ("the Envolve-HNPS Contract"). The Envolve-HNPS Contract delegated to HNPS the material responsibilities Buckeye had contracted with Envolve to provide. However, Centene, Buckeye and Envolve all understood that HNPS would not actually perform PBM services for Buckeye, but rather would subcontract such work to Caremark. Section 2.03 of the Envolve-HNPS Contract states in part:

> "As of the Effective Date, HNPS has subcontracted the performance of certain of the Services, including certain claims processing and retail pharmacy network contracting services to CaremarkPCS Health, L.L.C.,

and CVS Caremark Part D Services, L.L.C., each, a subsidiary of CVS Health Corporation."

30.     The addition of HNPS and Caremark as participants in Buckeye's pharmacy benefits administration created an opaque and multi-layered billing process that provided Defendants the opportunity to hide from ODM the true amounts Buckeye paid for the prescription drugs dispensed to Buckeye's members.

31.     After the execution of the Envolve-HNPS Contract, Caremark was responsible for adjudicating the pharmacy claims of Buckeye's members. This meant that when a Buckeye member visited a pharmacy, Caremark was responsible for determining, among other things, that the member was covered under Buckeye's plan, as well as the amount of the reimbursement paid to the pharmacy for dispensing the drugs. Caremark also paid the pharmacy a dispensing fee for its work; this amount was set by Caremark's national pharmacy network contracts.

32.     Each week, Caremark sent an invoice directed to "CNC MEDICAID TRADITIONAL-STANDARD"[7] listing the charges for all Buckeye-related claims Caremark paid during the preceding week. These invoices were sent to Envolve's offices, bypassing HNPS. The Caremark invoices included minimal detail, but did reflect, each week, an amount labeled "CREDIT-RETAIL;" this amount materially reduced the total that Envolve was required to pay.[8]

33.     Each week, Envolve subsequently sent an invoice to Buckeye, billing Buckeye for the same set of claims addressed in the Caremark invoice for the corresponding week.[9]

---

[7] "CNC" is the stock exchange ticker symbol for Centene Corporation.
[8] An example of a Caremark Invoice is attached as Exhibit 2. The "CREDIT-RETAIL" amount is highlighted for identification.
[9] An example of an Envolve invoice is attached as Exhibit 3.

34.     Envolve always billed Buckeye significantly more than it paid Caremark for the claims processed in a given week.  By way of example, for the week of September 8th 2018, Caremark's bill to Envolve totaled $6,996,247.29, while Envolve's invoice to Buckeye was $7,395,783.31, a markup of *$399,536.02* in a single week.[10] Each week, using the State's money from its collected capitated fee, Buckeye paid Envolve's bills without comment or complaint.

35.     Therefore, in Ohio, the net effect of the Envolve-HNPS Contract was that by mid-2016, Caremark was handling most of the pharmacy benefit management responsibilities for Buckeye and was doing so for significantly less than Envolve was billing Buckeye for the work. These cost savings were not disclosed to ODM and were not passed on to ODM or the State. Instead, through the practices described below, Centene, Buckeye and Envolve secretly retained these monies for themselves to pad Centene's profits at the expense of the taxpayers of the State of Ohio.

### *Envolve Billed Buckeye for Amounts Paid by Third Parties*

36.     Per state and federal law, Medicaid is considered the "payor of last resort."  This means that if a third-party is responsible for paying any costs for a Medicaid recipient, the cost is first paid by the third-party up to its limit of liability, with only the remaining balance actually paid by the Medicaid Program.

37.     Envolve's invoices to Buckeye contained a "Billing Summary" which broke down the total amount due from Buckeye into itemized categories of costs, as demonstrated in the following excerpt:

BILLING SUMMARY

| | Record Count | Ingredient Cost | Adjustment Cost | Net Ingredient Cost | Patient Payment | Dispensing Fees | Vccn Adm Fees | Sales Tax | Total | Admin Fees | Billed Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PAID TOTAL | 110,448 | $17,372,394.69 | ($9,953,517.61) | $7,418,877.08 | $0.00 | $211,606.79 | $1,832.00 | $3.83 | $7,730,003.12 | $55,224.00 | $7,785,227.12 |
| OOC REVERSALS | (6,666) | ($919,142.36) | $552,417.59 | ($366,724.77) | $0.00 | ($12,667.80) | ($35.50) | $0.00 | ($386,110.81) | ($3,333.00) | ($389,443.81) |
| NET BILLING | 103,782 | $16,453,252.33 | ($9,401,100.02) | $7,052,152.31 | $0.00 | $198,938.99 | $1,796.50 | $3.83 | $7,343,892.31 | $51,891.00 | $7,395,783.31 |

---

[10] *See* Exhibit 2, Exhibit 3

9

38.     In the Billing Summary, these categories of costs were added together to obtain the "Billed Amount," which was the grand total to be paid by Buckeye for a given week.

39.     Examination of Envolve's invoices, however, revealed that the sum of the categories of costs did not equal, in any instance, the Billed Amount. Instead, the sum of the categories of costs was a different, lower amount.  When questioned during Plaintiffs' investigation about this discrepancy, Envolve answered as follows:

> "Variance is Other Payer Amount which was new data element for plans on CVS platform (See Column AX on DataMart tab) that was not added to EPS invoices when plans initially moved to CVS. The Total amount of $7,343,892.31 is still the correct amount billed and the $91,000.68 should have been added to the Net ingredient cost amount.  Other Payer Amount represents amount paid by primary insurance for claim and Medicaid was secondary."[11]

40.     In essence, the above statement is an admission, by Envolve, that it was Envolve's practice to charge Buckeye for payments Envolve never made to pharmacy providers.  In fact, these payments were made by various third parties, and should have been *subtracted* from the amounts charged to Buckeye rather than added to the amounts charged to Buckeye.  Crucially, Envolve did not disclose these charges on the face of any of the invoices it sent to Buckeye.

### *Envolve Failed to Disclose Discounts it Received from Caremark.*

41.     Plaintiffs obtained a copy of the HNPS-Caremark Contract, in the course of Plaintiffs' analysis and investigation, which had not previously been disclosed to ODM or the State.

42.     In the HNPS-Caremark Contract, Caremark agreed pay Envolve $1.25 per claim for each retail pharmacy claim Caremark processed for Buckeye's members (the "Caremark

---

[11] Exhibit 4, spreadsheet provided to Plaintiffs by Centene on February 2, 2021.

Discount").[12]  This payment was reflected each month as a credit on the face of the invoices sent from Caremark to Envolve as the "CREDIT-RETAIL" field described previously.[13] The Caremark Discount is neither referenced nor disclosed on the invoices Envolve sent to Buckeye. Envolve's invoices, in fact, charge Buckeye the *undiscounted* price that appears on Caremark's invoices to Envolve.

43.     Envolve failed to include the Caremark Discount on its invoices to Buckeye with full knowledge that the amounts reflected on the Envolve to Buckeye invoices (1) were inaccurate and misleading; (2) would be considered by ODM and others to be the amounts actually charged for the pharmacy services rendered; and (3) would be considered by ODM and its analysts in calculating medical loss ratios and capitation payments for the Ohio Medicaid Program.

44.     Envolve's failure to disclose the Caremark Discount on its invoices in a way that could be detected or understood by ODM had significant consequences and, moreover, shows the high level of coordination between Centene, Envolve and Buckeye in their joint effort to maximize Centene's corporate profit at the expense of ODM and the State.

45.     As an initial matter, Envolve saved $1.25 per retail claim on the amounts it was required to pay Caremark; this savings accrued to Envolve as a reduction in its costs.  Second, Envolve was able to bill Buckeye for the same $1.25 per claim, thus increasing Envolve's income.  Finally, Buckeye was able to pay Envolve an extra $1.25 per claim, while preventing ODM from being able to discover, analyze or question the overpayments. The result of this scheme was an artificial inflation of the pharmacy costs Buckeye reported to ODM.  At each

---

[12] Due to its considerable length, the HNPS-Caremark Contract is not attached as an Exhibit to this Complaint.  Plaintiffs will provide a copy to the Court or counsel opposite upon request.
[13] Exhibit 2.

level of Defendants' contractual chain, the obvious goal was to increase the profits that flowed back to Centene while hiding those profits from public view and ODM's scrutiny.

46.     Caremark, too, appears to have become concerned that Defendants were not accurately reporting the Caremark Discount to ODM.  To protect itself against potential liability, Caremark included the following disclaimer on the face of its invoices to Envolve:

> "To the extent required, you agree to fully and accurately disclose and report any discount received from us, whether reflected in the above charges or otherwise provided to you, as a discount against the price of the drugs in any reporting to government health care programs."

### *Envolve Deceptively Inflated Dispensing Fees Charged to Buckeye*

47.     PBMs compensate pharmacy providers in the form of a dispensing fee paid to the pharmacy for dispensing prescriptions. The dispensing fee is negotiated as part of the pharmacy's network agreement with the PBM. The PBM is, in turn, reimbursed by its client health plan for the dispensing fee it pays to the pharmacy providers.

48.     The HNPS-Caremark Contract states that Centene will pay a dispensing fee in the amount of fifty cents per claim, for most claims.

49.     The claims data provided by Caremark and Envolve show that Caremark was, in fact, charging the agreed-upon fifty cent dispensing fee to Envolve.

50.     The same claims data, however, shows that Envolve was charging Buckeye a dispensing fee of $1.95 per claim, a mark-up of $1.45 per transaction.  Caremark's data, furthermore, shows that the pharmacy providers dispensing drugs to Buckeye's Medicaid beneficiaries received dispensing fees only from Caremark and did not receive any part of the $1.45 additional charge added by Envolve.

51.     Plaintiffs contend that the inflation of the dispensing fees Envolve billed to Buckeye constituted an attempt by Defendants to disguise the duplicative administrative fees resulting from Buckeye's layered pharmacy subcontracts.

52.     There are material differences in the manner administrative fees and dispensing fees are treated for capitation calculations and medical loss ratio reporting purposes. By disguising an administrative fee as a dispensing fee, Defendants were able to artificially and misleadingly increase their dispensing fees—which are treated by Buckeye as costs—and shield from view their collection of duplicative and unnecessary administrative fees, which are treated as income.

53.     Through this deception, Defendants created the appearance that Buckeye was making little profit from its contract with ODM while simultaneously collecting an additional $1.45 per claim as profit that made its way, ultimately, to Centene's consolidated balance sheet.

54.     This practice is facially deceptive. Envolve never directly paid any amounts to pharmacy providers as dispensing fees yet, with the full knowledge of Centene and Buckeye, represented on its invoices it was doing so.

### *Buckeye Misrepresented Its Costs in its Encounter Submissions to ODM*

55.     One of the methods MCOs use to report the costs of their services to ODM is by submitting encounter data, which is data showing the funds expended for each medical service provided to the MCO's members. Buckeye submitted such encounter data to ODM as required by the ODM Provider Agreements. Plaintiffs have compared Buckeye's encounter data with (1) Caremark's claims data; (2) Envolve's claims data; (3) Caremark's invoices to Envolve; and (4) Envolve's invoices to Buckeye.

56.　　The encounter data analysis shows that Buckeye's encounter data does not report, at any time between January 2, 2017 and December 31, 2020, the $1.25 Caremark Discount. Instead, Buckeye submitted encounter data reflecting the drug costs billed by Caremark *before* the Caremark Discount was applied, thus misleading ODM as to the actual costs Buckeye's subcontractor Envolve incurred when providing pharmacy benefit services.

57.　　Further, between October 1, 2016 and July 1, 2018, Buckeye's encounter data also falsely represented that Buckeye was paying a dispensing fee to pharmacies of $1.95, when the actual dispensing fees Caremark paid were far lower.

<u>**Count I**</u>

**Breach of Contract**

**(Buckeye)**

58.　　Plaintiffs hereby incorporate by reference all previous paragraphs.

59.　　The ODM Provider Agreements entered into between ODM and Buckeye were and are valid and enforceable contracts.

60.　　Plaintiffs have fully performed or tendered all performance required under the ODM Provider Agreements.

61.　　Pursuant to the ODM Provider Agreements, Buckeye was obligated to ensure that its subcontractor PBM, Envolve, fully disclosed the method and amount of compensation or other consideration that Envolve received from Buckeye.

62.　　Pursuant to the ODM Provider Agreements, Buckeye, as an MCO, and Envolve, as Buckeye's subcontractor, were required to comply with all laws and regulations applicable to the work they performed pursuant to the ODM Provider Agreements.

14

63. Pursuant to the ODM Provider Agreements and R.C. § 5164.35, Buckeye and Envolve were prohibited from:

1. Using deception to obtain, or to attempt to obtain, payments under the Medicaid program to which they were not entitled;

2. Receiving payments to which they were not entitled;

3. Receiving payments in a greater amount than that to which they were entitled; and

4. Falsifying any report or document related to their work under the ODM Provider Agreements.

64. Buckeye failed to ensure that Envolve fully disclosed the method and amount of the compensation it was paid by Buckeye by: (1) knowingly allowing Envolve to bill for dispensing fees that Envolve did not, in fact, pay to pharmacy providers; (2) knowingly allowing Envolve to bill to Buckeye amounts that did not reflect the Caremark Discount; and (3) knowingly allowing Envolve to bill Buckeye for amounts paid by third party payors.

65. Buckeye failed to comply with R.C. § 5164.35 because it submitted encounter data that was required under the ODM Provider Agreements which deceptively misrepresented the costs of the pharmacy services Buckeye provided to its members.

66. Buckeye failed to comply with R.C. § 5164.35 because it used deception to receive payments from ODM that exceed the payments it was entitled to receive. These overpayments were a direct consequence of Buckeye's provision of false and misleading reports, encounter data and information to ODM, which Buckeye knew or should have known would be used to set the capitation rates for Ohio Medicaid Program.

67. Buckeye failed to comply with R.C. § 5164.35 because it knowingly provided inflated pharmacy cost information to ODM as part of a deceptive scheme designed to maximize

the profitability of its parent company, Centene, at the expense of the Ohio Medicaid Program and the citizens of the State of Ohio.

68.     Envolve failed to comply with R.C. § 5164.35 because it knowingly submitted misleading and false invoices to Buckeye and did so with the intent to obtain payments which it was not due from the Ohio Medicaid Program. Envolve's invoices contained charges for amounts that were in fact paid by third parties, and further included amounts deceptively labeled as dispensing fees that were not paid to pharmacy providers.

69.     Envolve failed to comply with R.C. § 5164.35 because it knowingly failed to disclose the Caremark Discount on its invoices to Envolve and did so with the intent to obtain payments to which it was not due from the Ohio Medicaid Program. Envolve instead retained those payments as a hidden profit.

70.     These as well as other actions and omissions constitute breaches of Buckeye's duties under its contract with ODM.

71.     Pursuant to the ODM Provider Agreements, Buckeye is liable for breaches of contract committed by its subcontractors, including Envolve.

72.     As a result of the breaches described herein, Plaintiffs have been damaged financially in that the Ohio Medicaid Program has expended tens of millions of dollars which, in the absence of these breaches, it would not have expended.

73.     Buckeye is legally responsible for the totality of the financial damages suffered by Plaintiffs as a result of the breaches of contract committed by Buckeye and its subcontractor, Envolve.

## Count II

## Violation of R.C. § 5164.35

## (Buckeye and Envolve)

74.    Plaintiffs hereby incorporate by reference all previous paragraphs.

75.    Buckeye and Envolve are Providers as defined by state and federal law, as they are entities involved in the delivery of Medicaid health care services in the state of Ohio.

76.    Pursuant to R.C. § 5164.35, Buckeye and Envolve were prohibited from:

   1.    Using deception to obtain, or to attempt to obtain payments under the Medicaid program to which they were not entitled;

   2.    Receiving payments to which they were not entitled;

   3.    Receiving payments in a greater amount than that to which they are entitled; and

   4.    Falsifying any report or document related to their work under the ODM Provider Agreements.

77.    Buckeye violated R.C. § 5164.35 by knowingly, recklessly, or with deliberate ignorance submitting encounter data to ODM that deceptively misrepresented the costs of the pharmacy services provided by Buckeye to its members.

78.    Buckeye violated R.C. § 5164.35 by knowingly, recklessly or with deliberate ignorance allowing and consenting to Envolve's invoicing practices, which (1) charged Buckeye for dispensing fees that Envolve did not, in fact, pay; (2) charged Buckeye for amounts that did not reflect the Caremark Discount; and (3) charged Buckeye for amounts that had been paid not by Envolve but rather by third party payors.

79.    Buckeye violated R.C. § 5164.35 by knowingly and willfully receiving and accepting payments from ODM in excess of those to which it was entitled.

17

80. Buckeye violated R.C. § 5164.35 by knowingly, recklessly or with deliberate ignorance providing inflated pharmacy cost information to ODM as part of a deceptive scheme designed to maximize the profitability of its parent company, Centene, at the expense of the Ohio Medicaid Program and the citizens of the state of Ohio.

81. Envolve violated R.C. § 5164.35 by knowingly, recklessly or with deliberate ignorance submitting, invoices that were misleading and false, with the intent to obtain payments it was not due from the Ohio Medicaid Program. These invoices contained charges for amounts that were in fact paid by third parties and amounts deceptively labeled as dispensing fees that were not paid to pharmacy providers.

82. Envolve violated R.C. § 5164.35 by knowingly, recklessly or with deliberate ignorance and with the intent to obtain payments to which it was not due from the Ohio Medicaid Program, failing to disclose the Caremark Discount on its invoices to Buckeye and retaining such discounts as a hidden profit.

83. As a result of their multiple breaches of R.C. § 5164.35, Buckeye and Envolve are liable to Plaintiffs for the actual monetary damages caused by their violations, as well as the following:

   a.   Charges for interest on amounts wrongfully obtained;

   b.   Treble damages;

   c.   Penalties not less than $5000.00 and not more than $10,000 for each deceptive claim or falsification;

   d.   Liability for costs incurred by the State in enforcing the provisions of R.C. §5164.35;

   d.   Termination of the violating party's provider agreement; and

   e.   Withholding all payments to the provider.

18

## Count III

### Conspiracy to Commit Violations of R.C. § 5164.35

### (Buckeye, Envolve and Centene)

84.     Plaintiffs hereby incorporate by reference all previous paragraphs.

85.     Centene, Buckeye and Envolve ("Conspirators") share common ownership and control, as Buckeye and Envolve are wholly owned subsidiaries of Centene.

86.     The Conspirators were each aware that Buckeye was a party to ODM Provider Agreements pursuant to which Buckeye was responsible for providing Medicaid services to its members in the State of Ohio.

87.     The Conspirators were each aware that the provisions of Buckeye's ODM Provider Agreements required Buckeye and its subcontractors to perform their duties under the agreements in compliance with state laws regulating the Ohio Medicaid Program, including R.C. § 5164.35, which prohibits the use of deception in obtaining funds from the Ohio Medicaid Program, the falsification of Medicaid-related submissions, or any other conduct, act or omission that creates, confirms or perpetuates a false impression in another, including withholding information or preventing another from acquiring information relevant to the operation of the Ohio Medicaid Program.

88.     The Conspirators formed a malicious combination with the intention of causing injury to the Plaintiffs by causing Plaintiffs to pay Conspirators money the Conspirators were not entitled to receive.

89.     The Conspirators' actions were undertaken with the specific intent and purpose to wrongfully increase the profits of the Conspirators, which all flowed to a common destination -- Centene's bank account.

90.     As shown below, the conspiracy required the efforts and participation of each of the Conspirators.

91.     When Centene purchased HNPS, it had knowledge of the advantageous terms of HNPS's contract with Caremark, including the existence of the Caremark Discount and the fifty-cent dispensing fee. In furtherance of the conspiracy, Centene allowed Envolve to utilize the Caremark-HNPS Contract to reduce its costs in providing pharmacy services to Buckeye and did so with knowledge that the Caremark Discount and dispensing fee would be reported and invoiced in a deceptive manner in order to prevent ODM from discovering the scheme.

92.     In furtherance of the conspiracy, Envolve (1) hid the Caremark Discount; (2) billed Buckeye for amounts that had been paid by third parties; and (3) misrepresented the amount that had been paid to pharmacies as dispensing fees.  These practices enabled the Conspirators to secretly retain the Caremark Discount, the third party payments, and the falsified dispensing fee upcharge as profit.

93.     For its part, Buckeye furthered the conspiracy by knowingly permitting itself to be overbilled for pharmacy services by its co-conspirators and by misrepresenting to ODM the costs it actually incurred in providing pharmacy benefits to its members.  Buckeye's subcontract with Envolve became, in essence, a conduit through which the Conspirators could secretly siphon funds from the Ohio Medicaid Program, characterize them as costs rather than profits, and funnel them to Centene.

94.     Through their combined, coordinated, and unlawful efforts to falsify, misrepresent and suppress information the Conspirators knew was essential for the efficient management of the Ohio Medicaid Program, the Conspirators worked together, with purpose and intent, to

violate the prohibitions contained in R.C. §5164.35. These violations caused the State to pay Buckeye artificially inflated capitated fees beginning in 2017.

95. Plaintiffs suffered substantial financial harm as a result of the conspiracy, spending tens of millions of dollars that would not have been spent in the absence of the Conspirator's scheme to secretly misappropriate funds that were intended to provide essential medical services to Ohio's most vulnerable citizens.

96. As a result of their malicious combination, the Conspirators are jointly and severally liable for all damages suffered by the Plaintiffs as a consequence of their unlawful agreement to engage in wrongful conduct, as well as for all penalties, special damages and other relief which may be awarded to the Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants, jointly and severally, as follows:

1. Compensatory damages in excess of twenty-five thousand dollars ($25,000);

2. For all remedies and penalties provided for in R.C. § 5164.35(c) including, but not limited to, the following:

    a. An award of prejudgment interest on Plaintiffs' contractual damages at the maximum rate allowed by §1343.01 of the Ohio Revised Code;

    b. An award of three times the amount of the payments wrongfully obtained by Defendants;

    c. Damages in an amount not less than $5,000.00 and not greater than $10,000.00 for each deceptive claim or falsification made by Defendants; and

    d. An award of all reasonable expenses, including attorneys' fees, incurred by Plaintiffs in pursuing this litigation.

3. Prejudgment and post judgment interest;

4. An award of its expenses, including attorney fees, incurred by Plaintiffs; and

5. Such other relief to which Plaintiffs are entitled and this Court deems appropriate and just.

Respectfully submitted,

OHIO DEPARTMENT OF MEDICAID and STATE OF OHIO

Donald W. Davis, Jr. (0030559)
Adam D. Fuller (0076431)
Elizabeth Shively Boatwright (0081264)
BRENNAN, MANNA & DIAMOND, LLC
75 East Market Street
Akron, OH 44308
Telephone: 330-253-5060
Facsimile: 330-253-1977
dwdavis@bmdllc.com
adfuller@bmdllc.com
esboatwright@bmdllc.com

*Special Counsel for Ohio Department of Medicaid and the State of Ohio*

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues herein.

Attorney for Plaintiffs